## Case No. 7,755.

### KIDD v. SPENCE et al.

### [4 Fish. Pat. Cas. 37.] [1]

Circuit Court. S. D. New York. June, 1859.

PATENTS—BONNET FRAMES—CLAIM COVERING WHOLE—INFRINGEMENT OF PART.

1. Although the plaintiff might have claimed something different from what he has claimed, the court must, in the construction of the patent, be governed entirely by the claim he makes.
[Cited in Dennis v. Cross, Case No. 3,792.]

2. Kidd's claim for "making ladies' bonnet frames of two thicknesses of cape lace, substantially as and in the manner specified," when construed by reference to the specification, is not a claim for the use of double cape lace in making any portion of a bonnet frame less than the entire frame.

This was an action on the case, tried by Judge Ingersoll and a jury, to recover damages [from Jasper Spence and others] for the infringement of letters patent [No. 19,932] for an "improvement in bonnet frames,"

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

granted to plaintiff [Whitten E. Kidd] April 13, 1858. The invention, as described and claimed, was as follows: "I cut out two thicknesses of cape net to make the front b, two others to make the crown c, and two others to make the tip d; but for greater expedition I cut some twenty. Having cut the parts I take three thicknesses of the material known as buckram, moisten one of them with water by rubbing it over with a soft brush dipped in water, and lay it between the other two dry ones. On these I pile twenty (more or less) thicknesses of the cape net, cut as before stated, and on top I lay three thicknesses of buckram, prepared in like manner as those below. On the top I pile another batch of pieces of cape net, and so proceed until I get the desired quantity. I then lay on the top a board with a slight weight, to make a slight pressure, and let it remain over night, when the whole will be found slightly moistened. The next day I take the pieces, two at a time, and subject them to pressure between heated molds of the required configuration, by which they assume the figure desired, and the two thicknesses unite where they come in contact." Claim: "Making ladies' bonnet frames of two thicknesses of cape lace, substantially as and in the manner specified." At the trial it appeared that bonnet frames of double thickness buckram, composed of three parts, viz: front, band, and tip, each formed separately in hot dies, and the three then put together by pressing them on a block with a hot iron, had long been known; also, that entire bonnet frames of double thickness cape lace had been extensively made and sold in the city of New York seven years previous to the date of the patent, and that tips for bonnet frames, of double thickness cape lace, had been manufactured in the city of New York by the same mode described in the patent, and had been made into bonnet frames and sold in quantities in the year 1847. Upon this state of facts the counsel submitted to the court their views upon the construction of the patent.

J. D. Stevenson, C. M. Keller, and W. Curtis Noyes, for plaintiff.

C. N. Bovee, J. W. R. Bromley, and E. W. Stoughton, for defendants.

INGERSOLL, District Judge. This patent is not for the use of double cape lace in making bonnet frames. It is not for making a part of a bonnet frame of double cape lace. I think it appears clearly from the patent what was granted, or, more properly speaking, what the language of the patent purports to grant. Although he might have claimed something different from what he has claimed, I must, in the construction of the patent, be governed entirely by the claim that he makes. He begins by stating that he has invented a new and useful improve-

[Drawings of Patent No. 19,932, granted April 13, 1858, to W. E. Kidd. Published from the records of the United States patent office.]

ment in the method of making bonnet frames of cape net, that his improvement is a method of making ladies' bonnet frames of cape net; and then he goes on and describes what he considers as ladies' bonnet frames, when made; and he refers to the drawings with a view of making his ideas more clear and distinct. He refers to a drawing in which he describes what he means by a bonnet frame, according to his improved method, and that is the figure marked as figure 1, which figure 1 includes front, band, and tip. These, when united, he understands, according to his description, to be the bonnet frame. And he afterwards goes on and describes the particular parts composing this bonnet frame, which particular parts he represents in figures 4, 5, and 6, and which figures 4, 5, and 6 are separate views of the pieces as cut, for making the front, crown, and tip.

Then he goes on and describes how bonnet frames have been heretofore made, and the objection that has been had to bonnet frames made of cape lace, previous to his invention, which objection (that is, the great objection) is the use of the wire to keep them in shape; and describes and sets forth the means which he uses, and states that they can be kept in shape and made lighter by the method which he adopts. He describes how the separate parts are formed and then how the separate parts are united, and he concludes: When the frame is thus formed and made with lace, it is much lighter than that made heretofore, more elastic, and if pressed out of shape it will spring back, by reason of this elasticity, easier than when made of a single wire.

He speaks of the bonnet frame which he has patented as a frame composed of these three several parts; and what he claims as his invention is, and what is secured to

him by his patent, or rather what is purported to be secured to him by his patent, is the method of making these bonnet frames of two thicknesses of what he calls cape lace, substantially as in the manner specified. It is clear that he could not have obtained a patent that would have been of any avail to him, if he had a patent for the use of double cape lace in making a bonnet frame, because, in 1847, it was thus used as part of a bonnet frame, to wit: the tip; and he does not pretend to patent the particular parts, but he patents the whole thing—a bonnet frame—that which he denominates and which he describes to be bonnet frame. I think that is the construction which must be put upon this patent; and that the only question for the jury to determine, under this view of the case, would be whether the defendant has, by the method which he has adopted, to wit: the method of making a crown of this double cape lace, and then completing it by making a front with wires and single lace sewed upon them and attached to the crown; whether that is a substantial adoption of the method described by the plaintiff.

If it is a substantial adoption, if it is substantially the bonnet frame as described by the plaintiff, why then it will follow that it is a substantial infringement of the method described by the plaintiff of making bonnet frames. If it is not a substantial adoption of the method described by the plaintiff of making bonnet frames, it can not be considered as any violation of the patent. Whether it is a substantial adoption of it, I consider to be a question of fact for the jury to determine.

Upon hearing the construction given by the court to the patent, the counsel for the

plaintiff conceded that the verdict should be for the defendant, and the jury found accordingly.